UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Olivia Valadez, successor in interest to the Estate of Eric Valadez,<br><br>               Plaintiff,<br><br>   v.<br><br>Sutter Health Memorial Hospital Los Banos, et al., | No. 1:22-cv-00263 KJM-EPG<br><br>ORDER |

      Plaintiff alleges Sutter Health Memorial Hospital Los Banos (the Hospital) violated federal and California laws when it negligently allowed her son Eric Valadez to escape the hospital and commit suicide.  The court granted plaintiff summary judgment on her claim the Hospital violated the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd, by failing to provide Valadez stabilizing treatment.  The Hospital now moves for reconsideration of this court's ruling, arguing the court failed to take into consideration the report and deposition of its expert to rebut plaintiff's experts' opinions the Hospital violated EMTALA.  For the reasons that follow, the court **grants in part and denies in part** the Hospital's motion for reconsideration.

**I.    BACKGROUND**

      Plaintiff filed suit against the Hospital in this court on March 3, 2022.  *See* Compl., ECF No. 2.  Plaintiff alleges the Hospital violated EMTALA, by failing to screen and by failing to

1

1    stabilize Valadez when it treated him on March 21-22, 2021, *see id.* ¶¶ 26–34; the Americans
2    with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189, *see id.* ¶¶ 17–25; California's Unruh
3    Civil Rights Act (Unruh Act), Cal. Civ. Code § 51, *see id.* ¶¶ 35–45, and California's Disabled
4    Person's Act (CDPA), Cal. Civ. Code § 54, *see id.* ¶¶ 46–56. Plaintiff also alleges the Hospital
5    committed negligence per se. *See* Compl. ¶¶ 57–66.

   Both parties moved for partial summary judgment on all plaintiff's claims except her negligence per se claim. *See* Def.'s Mot. Summ. J., ECF No. 46; Pl.'s Mot. Summ. J., ECF No. 57. In opposition to plaintiff's motion for summary judgment, the Hospital submitted the expert report and partial deposition of Patrice Callagy, the Executive Director of Emergency Services for Stanford Health Care. *See* Schultz Decl. Exs. D (Callagy Rep.) & E (Callagy Dep.) at 57–74, ECF No. 66.[1] Callagy opined the Hospital properly screened Valadez and gave Valadez proper medical care but did not need to give him stabilizing care while he was a patient at the Hospital and therefore did not violate EMTALA. *See* Callagy Dep. at 19–20, 25 ("I did not see that he needed any treatment that wasn't being provided."). Callagy also opined that Valadez's condition did not deteriorate while he was a patient at the Hospital. *See id.* at 19 ("I believe the patient had the same condition throughout his visit."). According to Callagy, Valadez's condition only deteriorated after he had escaped. *See id.* Finally, Callagy believed the Hospital's treatment of Valadez was proper while he was in its care even though the Hospital had not provided Valadez with medication as "he wasn't exhibiting behavior within the records that required emergency medications to be given or a nurse to escalate it to a physician." *Id.* at 28.

   The court decided both parties' summary judgment motions. *See* Order (July 7, 2025), ECF No. 95. The court granted the Hospital's summary judgment motion on plaintiff's EMTALA claim insofar as it alleged the Hospital failed to screen Valadez, plaintiff's ADA claim, plaintiff's Unruh Act claim, and plaintiff's CDPA claim. *See id.* at 24–25. The court otherwise denied the Hospital's motion. *See id.* The court denied plaintiff's motion for summary judgment

---

[1] Pages cited here are those applied at the top right by the CM/ECF system with the exception of deposition transcripts. The court cites depositions to the original page numbers of the deposition transcript.

2

except with respect to plaintiff's EMTALA claim insofar as it alleged the Hospital failed to provide Valadez stabilizing treatment. *See id.* at 25.

Specifically, the court held that the following elements required to prove a failure to stabilize claim were undisputed. First, the court held it was undisputed Valadez had a qualifying emergency condition. *See id.* at 16. Second, it held it was undisputed the Hospital had actual knowledge of the emergency condition. *See id.* at 17. Third, the court held it was undisputed the Hospital was providing emergency care and not inpatient care. *See id.* Fourth, the court found there was not a dispute of material fact the Hospital failed to provide stabilizing care to Valadez. *See id.* at 17–18. The court noted the Hospital failed to provide stabilizing anti-psychotic medication and had failed to restrain Valadez so he could not flee from the premises. *See id.* at 17–18. The court also found it was undisputed Valadez's condition worsened while he was a patient at the Hospital. *See id.* at 17. Finally, the court found there was no material dispute as to causation: that the Hospital's failure to restrain Valadez caused his suicide. *See id.* at 18–19.

In making this determination, the court did not reference Callagy's expert report, or the portions of her deposition submitted by the Hospital in opposition to plaintiff's motion for summary judgment. *See, e.g., id.* at 8 n.4 (not citing Schultz Declaration when noting court had "compared the parties' respective statements of fact and the underlying record and reviewed the relevant deposition transcripts"). Further, the court incorrectly stated the Hospital provided no expert to rebut plaintiff's clams the Hospital failed to provide stabilizing care to Valadez. *See id.* at 20.

The Hospital submitted its motion for reconsideration on July 17, 2025, arguing Callagy's expert report creates a dispute of material fact over whether the Hospital violated EMTALA by failing to stabilize Valadez. *See* Mot., ECF No. 97; Mem., ECF No. 97-1. This motion is now fully briefed. *See* Mot.; Opp'n, ECF No. 99; Reply, ECF No. 101. The court has determined there is no need for oral argument and so have submitted the motion on the papers. *See* E.D. Cal. L.R. 230(g).

/////

## II. LEGAL STANDARD

The Hospital can obtain relief from an order for "any . . . reason that justifies relief." Fed R. Civ. P. 60(b)(6). But its motion for reconsideration should "not be used to ask the court to rethink what the court [has] already thought through—rightly or wrongly." *United States v. Rezzonico*, 32 F. Supp. 2d. 1112, 1116 (D. Ariz. 1998). The Hospital's motion should present "newly discovered evidence" or show the court "committed clear error" or argue there has been an "intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). For a court to reconsider a previous ruling under the "clear error" standard, it must have a "definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Even if the Hospital persuades the court to reconsider its previous order, the court will still need to consider whether there is a dispute of material fact with respect to plaintiff's EMTALA duty to stabilize claim. To succeed on summary judgment, plaintiff must show "there is no genuine dispute as to any material fact and [she is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. The court views the record in the light most favorable to the non-moving party and draws reasonable inferences in their favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A trial court should act "with caution in granting summary judgment" especially if it concludes "there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. Further, "[a]s a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." *In Re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994). "However, where the evidence is as clear as that in this record, the court is not required to defer to the contrary opinion of [defendant's] expert."

4

1  *Id.* (quoting *In Re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989)).  An expert's
2  conclusory opinions are insufficient to create a dispute of material fact when the "record clearly
3  rebuts" those opinions.  *See id.*

4  **III.    ANALYSIS**
5        **A.    Reconsideration**

6        The court finds it committed clear error in not expressly considering Callagy's expert
7  report and deposition submitted with the Hospital's opposition to plaintiff's motion for summary
8  judgment.  *See* Callagy Rep.; Callagy Dep.  Specifically, the court erred in not citing or
9  referencing Callagy's report or deposition testimony in identifying the relevant facts.  *See* Order
10  (July 7, 2025) at 8 n.4.  The court also erred in saying the Hospital failed to provide an expert to
11  rebut plaintiff's three expert reports.  *See id.* at 20.

12        Plaintiff argues now, although she did not say so at summary judgment, the expert report
13  was irrelevant because Callagy is not a doctor and cannot provide an expert opinion on
14  emergency stabilizing care.  *See* Opp'n at 2–3.  In this respect, the court disagrees.  Callagy is an
15  emergency nurse who is qualified to opine on emergency care, based on her experience and
16  credentials and given that nurses were partially responsible for the care Valadez received at the
17  Hospital.  *See* Callagy Rep; Order (July 7, 2025) at 10.  Plaintiff herself provided an expert
18  opinion from a nurse, Dan Branch, which the court took into consideration when evaluating
19  plaintiff's motion for summary judgment.  The court finds no good reason to accept the testimony
20  of plaintiff's nurse expert while rejecting that of the Hospital's nurse expert.  *See* Order (July 7,
21  2025) at 11.  A factfinder ultimately could determine opinions provided by doctors carry more
22  weight than those of nurses, but that is not a determination for the court to make at the summary
23  judgment stage, at which the court evaluates only if there are disputes of material fact with
24  respect to plaintiff's claims.  *See* Fed. R. Civ. P. 56(a).

25        The court thus grants defendants' motion for reconsideration to the extent it proceeds to
26  reconsider its decision on plaintiff's motion for summary judgment of plaintiff's EMTALA duty
27  to stabilize claim taking account of Callagy's expert opinion.

### B. Summary Judgment

On reconsideration, the court considers Callagy's report and deposition testimony only with respect to plaintiff's duty to stabilize claim, as it has already granted the Hospital summary judgment on plaintiff's duty to screen claim and no party seeks reconsideration of that aspect of the court's decision. *See* Order (July 7, 2025) at 12–15. Upon careful review, the court finds Callagy's expert opinion with respect to plaintiff's duty to stabilize claim is conclusory and omits the kind of properly supported conclusion that would otherwise persuade the court to conclude the undisputed record does not support plaintiff's motion for summary judgment on her EMTALA failure to stabilize claim.

First, Callagy's opinion, conclusory as it is, mentions stabilization only in passing and as noted assumes the Hospital did not have a duty to stabilize Valadez, but rather that any required stabilization would occur after Valadez was transported to a different facility. *See* Callagy Decl. at 58 ("Mr. Valadez was deemed to meet criteria for a 5150 hold due to danger to self, and he was to be transported to an inpatient psychiatric hospital for treatment and stabilization."). But as the court previously found, the Hospital did have a duty to stabilize Valadez while he was a patient there, *see* Order (July 7, 2025) at 15, 17–20, and defendants have not moved for reconsideration of this determination.

Second, as plaintiffs argue, Callagy's opinion that the Hospital did not need to provide stabilizing care relies on a characterization of the undisputed medical records that is flatly contradicted by a review of the records themselves. *See* Opp'n at 3.

In Callagy's deposition, she opines Valadez did not need medication and did not require emergency treatment. *See* Callagy Dep. at 19–20, 25 (saying plaintiff did not need any treatment he was not receiving), 28. But the evidentiary record memorializes that Valadez's condition worsened at some point during his stay at the Hospital. *See* Pl.'s Stmt. of Evid. Ex. F (Pl.'s Med. Recs.) at 157–58, ECF No. 57-3. When he was first admitted, he denied distress and was assessed by Hospital staff as not being suicidal. *See* Pl.'s Med. Recs. at 175. But the trained psychiatrist who later saw Valadez, Dr. Brahmbhatt, noted he was exhibiting signs of paranoia and prescribed anti-psychotic medication, more than an hour before he eloped from the Hospital.

6

1   *See* Pl.'s Stmt. of Evid. Ex. F (Pl.'s Med. Recs.) at 167–68, ECF No. 57-3; *see also* ECF No. 66 (Brahmbhatt's 3/21/21 note at 11:10 p.m., recording fear, paranoia, hypervigilance and prescribing medication); *cf.* ECF 66 at 25 (elopement reported by 3/22/21 at 047 or 12:47 a.m.). A nurse then noted, about an hour before Valadez eloped, he had become paranoid and apprehensive and attempted to call his family multiple times, following the psychiatric evaluation. *See id.* at 23 (Nurse Salas's notes at "2340" or 11:40 p.m.).

Callagy's statement that Valadez "had the same condition throughout his visit" until "he eloped" does not square with these observations recorded in Valadez's medical file. *See* Callagy Dep. at 19. Callagy's deposition testimony at points seems to concede that a clinician had determined Valadez needed stabilizing during his stay, Dep. at 25:20-21; while she goes on to say that stabilization would not be needed if a patient was "directable," she does not say that Valadez was, *id.* at 27:10-19. Her testimony that two doctors had determined Valadez did not require medication, id. at 28:4-10, also completely ignores Brahmbhatt's prescription of psychiatric medications, more than hour before Valadez eloped, as reviewed above. Under these circumstances, the court gives weight to the undisputed record, not an opinion that disregards material portions of that record. *See In Re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1425.

On this record, no reasonable juror could find Callagy's opinion outweighs that of Brahmbhatt, the treating psychiatrist. Callagy's opinion also does not require the court to reconsider its determination that as a matter of law the Hospital had an obligation to restrain someone on a 5150 hold to prevent elopement and self-injury. *See* Order (July 7, 2025) at 9–11. Callagy's opinion in fact appears to concede causation in a way that is not helpful to the Hospital: that the elopement itself furthered a deterioration in Valadez's condition. *See* Callagy Dep. at 19 (noting Valadez's condition "escalated" or got worse, when he eloped).

In sum, having considered expressly Callagy's expert opinion and her deposition testimony, the court finds plaintiff's motion for summary judgment on the EMTALA failure to stabilize claim should still be granted.

/////

/////

## IV. CONCLUSION

For the reasons stated above, the court **grants** the Hospital's motion for reconsideration to the extent the court expressly considers Callagy's declaration and deposition in resolving summary judgment. Having reconsidered its summary judgment order, the court reaches the same conclusion but corrects its prior statements that did not take account of Callagy's opinion, and modifies those statements as they appear in the order at ECF No. 95 by replacing them with the discussion contained above.

The court thus **denies** the Hospital's motion for reconsideration of its decision on summary judgment, and clarifies that after reconsideration plaintiff's motion for summary judgment (ECF No. 57) is **granted** with respect to plaintiff's duty to stabilize claim under EMTALA. The remainder of the court's previous order (ECF No. 95) remains undisturbed. The parties will go to trial on plaintiff's negligence claim.

The pretrial conference has been set for **November 4, 2025**, at 10:30 am in Courtroom Three at 501 I Street, Sacramento, California, 95814. The parties shall meet and confer and file a joint pretrial statement no less than 14 days prior to the final pretrial conference. The provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint pretrial statement. At least one of the attorneys who will conduct the trial for each of the parties shall attend the final pretrial conference. All motions in limine must be filed in conjunction with the joint pretrial statement. In most cases, motions in limine are addressed and resolved on the morning of the first day of trial. The parties may alert the court at the final pretrial conference and in their final joint pretrial statement that a particular motion or motions should be resolved earlier. At the final pretrial conference, the court will set a briefing and hearing schedule on the motions in limine as necessary. The parties are reminded that a motion in limine is a pretrial procedural device designed to address the admissibility of evidence. The court looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial in the guise of motions in limine.

/////

/////

1        This order resolves ECF No. 97 and modifies in part the court's previous order at ECF
2   No. 95.
3        IT IS SO ORDERED.
4   DATED:  September 19, 2025.

                                        _____
                                        SENIOR UNITED STATES DISTRICT JUDGE