UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Olivia Valadez, successor in interest to the estate of Eric Valadez,<br><br>Plaintiff,<br><br>v.<br><br>Sutter Health Memorial Hospital Los Banos,<br><br>Defendant. | No. 1:22-cv-00263-KJM-EPG<br><br>ORDER |

The court recently issued a final pretrial order setting a settlement conference before the assigned Magistrate Judge. *See* Final Pretrial Order, ECF No. 119. The court also instructed the parties to meet and confer and file a joint statement "identifying their respective positions on (1) whether plaintiff may proceed to trial on a wrongful death claim and (2) what effect California's Medical Injury Compensation Reform Act (MICRA) has on the issues to be tried." *Id.* at 2. The parties have submitted their joint statement. ECF No. 120. The court now resolves the disputes identified in that statement. The court also addresses defendant Sutter Health Memorial Hospital Los Banos's objections to the final pretrial order.

I.      **WRONGFUL DEATH**

The parties first disagree whether plaintiff Olivia Valadez may pursue a wrongful death claim at trial. The complaint states that Ms. Valadez is pursuing this action as the "successor in

1

interest to the Estate of Eric Valadez," Compl. at 1, ECF No. 2, and it attaches a declaration by Ms. Valadez, which states she is pursuing a "survival action," Valadez Decl. ¶ 6, ECF No. 2-1 (quoting *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006)). A survival action is not a wrongful death action. *See, e.g.*, *Hayes v. County of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013) (applying California law). A wrongful death claim is a "new cause of action" arising from the death, and it vests in the decedent's heirs. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006). Damages in a wrongful death case "are in the nature of compensation for personal injury to the heir." *Id.* at 1264. A survival claim, by contrast, is a claim that "belonged to the decedent before death but, by statute, survives that event." *Id.* Damages in a survival action compensate for "the loss or damage that the decedent sustained or incurred before death." *Id.* at 1265 (quoting Cal. Civ. Proc. Code § 377.34).

Citing these differences, the hospital argues here that the estate, and Ms. Valadez in turn as personal representative, have not pursued a wrongful death claim and would lack standing to do so. *See* Joint Statement at 4–5. California appellate courts have permitted "the personal representative of the decedent as statutory trustee for the heirs" to pursue a wrongful death claim "on behalf of the heirs." *Adams v. Superior Court*, 196 Cal. App. 4th 71, 76–77 (2011) (citations and quotation marks omitted). Ms. Valadez, acting as Mr. Valadez's successor, could thus pursue a wrongful death claim on behalf of his heirs as personal representative.

The hospital also challenges Ms. Valadez's allegations, contending they would not support a wrongful death claim in any event. *See* Joint Statement at 6–7. Ms. Valadez urges the court not to entertain the hospital's arguments about her pleadings so soon before trial. She contends the hospital should have challenged her allegations in a pretrial motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. *See id.* at 3–4. While the federal rules permit defendants to move to dismiss for failure to state a claim "at trial," Fed. R. Civ. P. 12(h)(2)(C), the deadline the court set for dispositive motions in this case has passed, *see* Min. Order, ECF No. 45, and the hospital has not shown "good cause" to amend the scheduling order, *see* Fed. R. Civ. P. 16(b)(4).

1    The court nevertheless has considered the hospital's arguments about Ms. Valadez's
2    allegations in the interests of justice and in resolving this dispute on its merits; Ms. Valadez will
3    not suffer undue prejudice as a result. The hospital is correct that the complaint includes no
4    wrongful death claim. Joint Statement at 6–7. Nor does the complaint specifically identify or
5    quantify any damages sustained by Mr. Valadez's heirs, as opposed to Mr. Valadez himself. *See*
6    Compl. ¶¶ 34, 62–64. Despite that omission, the complaint does include allegations that could
7    show Ms. Valadez suffered harms as well, if nothing else by virtue of her close familial
8    relationship with Mr. Valadez and the tragic nature of his death. The Ninth Circuit has
9    emphasized that plaintiffs "need not plead specific legal theories in the complaint, so long as the
10   other side receives notice as to what is at issue in the case." *Pac. Coast Fed. of Fishermen's
11   Ass'n v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) (quoting *Am. Timber & Trading Co. v. First
12   Nat'l Bank of Ore.*, 690 F.2d 781, 786 (9th Cir. 1982)). Here, the complaint's factual allegations
13   give the hospital notice of its potential liability for harms to Ms. Valadez under a theory of
14   wrongful death in addition to the harms Mr. Valadez allegedly suffered, which Ms. Valadez
15   pursues as successor in interest. *See* Joint Statement at 3. In sum, Ms. Valadez may pursue a
16   wrongful death claim at trial.

17   **II.    MICRA**

18   Second, the parties disagree whether the MICRA caps any potential damages on Ms.
19   Valadez's claim that the hospital failed to stabilize Mr. Valadez in violation of EMTALA. The
20   relevant provisions of EMTALA impose obligations on hospitals to provide "treatment as may be
21   required to stabilize" an emergency medical condition, 42 U.S.C. § 1395dd(b)(1)(A), and
22   EMTALA permits civil actions for "damages available for personal injury under the law of the
23   State in which the hospital is located," California law in this case, *id.* § 1395dd(d)(2)(A).
24   California law imposes dollar limits on noneconomic damages awards in actions "for injury
25   against a health care provider based on professional negligence." Cal. Civ. Code § 3333.2(a)
26   (1975).[1] The code defines "professional negligence" as "a negligent act or omission to act by a

---

[1] Amendments to these provisions, which the legislature passed in 2022, became effective in 2023, after this case was filed. *See* 2022 Cal. Legis. Serv. Ch. 17 (A.B. 35) (West); *see also*

3

health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." *Id.* § 3333.2(c)(2).

The California Supreme Court has interpreted these provisions as applying to claims that a hospital failed to stabilize a patient in violation of EMTALA. *See Barris v. County of Los Angeles*, 20 Cal. 4th 101, 110 (1999) ("A claim under EMTALA for failure to stabilize is thus necessarily 'based on professional negligence' within the meaning of MICRA —it involves 'a negligent . . . omission to act by a health care provider in the rendering of professional services'—although it requires more." (quoting Cal. Civ. Code § 3333.2(a), (c)(2) (1975)). This court must follow the California Supreme Court's interpretation of California law, including the provisions of MICRA at issue here. *See Romar ex rel. Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, 583 F. Supp. 2d 1179, 1185 (E.D. Cal. 2008). This court is not bound to follow the California Supreme Court's interpretation of federal law, such as EMTALA, but this court finds the California Supreme Court's reasoning in *Barris* thorough and persuasive. *See Barris*, 20 Cal. 4th at 112–14; *see also Sampson v. Ukiah Valley Med. Ctr.*, No. 15-00160, 2017 WL 2834001, at *11 (N.D. Cal. June 30, 2017) (following *Barris*).

Ms. Valadez relies on the district court's decision in *Jackson v. East Bay Hospital* to argue otherwise, but the California Supreme Court expressly and persuasively rejected the district court's reasoning in its opinion in *Barris*. *See* 20 Cal. 4th at 114–15 (citing and disagreeing with 980 F. Supp. 1341, 1348 (N.D. Cal. 1997)). As the state supreme court explained, *Jackson* was based on the mistaken premise that EMTALA claims do not involve allegations or proof of inadequate medical treatment; a claim for failure to stabilize, such as the claim Ms. Valadez advances here, relies squarely on allegations about the adequacy of the care the patient received. *See, e.g.*, Compl. ¶¶ 31–32 (alleging the hospital "failed to provide [Mr. Valadez] with the

---

Cal. Civ. Code § 3333.2(g) (2023) (defining effective dates). The court therefore has relied on the previous version of section 3333.2.

1  appropriate emergency medical treatment to stabilize his condition" and "failed to properly
2  stabilize [him]").
3         Ms. Valadez also contends her EMTALA claims are "hybrid" claims, i.e., those involving
4  both professional negligence and other distinct claims not subject to MICRA's limits, citing the
5  California Welfare and Institutions Code. *See* Joint Statement at 12–13. As the district court
6  explained in *Romar*, which Ms. Valadez cites, "when a cause of action is asserted against a health
7  care provider on a legal theory other than medical malpractice, the court must determine whether
8  it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger
9  MICRA." 583 F. Supp. 2d at 1184 (quoting *Smith v. Ben Bennett, Inc.*, 133 Cal. App. 4th 1507,
10 1514 (2005)). Ms. Valadez cites the state Welfare and Institutions Code and argues her
11 EMTALA claim arises at least partially under that statute. *See* Joint Statement at 12–13. Even
12 assuming this theory of liability is valid, Ms. Valadez's allegations would still target the medical
13 services the hospital provided, i.e., an alleged "omission to act by a health care provider in the
14 rendering of professional services," as defined by MICRA. Cal. Civ. Code § 3333.2(c)(2) (1975).
15 The damages limits in section 3333.2 therefore apply to Ms. Valadez's claim for failure to
16 stabilize in violation of EMTALA.

### III. OBJECTIONS

       Defendant objects to the final pretrial order to the extent it identifies factual issues, witnesses, exhibits and other matters unrelated to "the amount of damages recoverable." ECF No. 121. It argues the amount of damages is "the only remaining disputed issue." *Id.* Plaintiff does not object to the final pretrial order; she believes it is "an accurate account of the proceedings and status of the case." ECF No. 122. Defendant's objection is **overruled**. The court deems the final pretrial order at ECF No. 119 final and effective as of the date of this order. This order does not, however, preclude any objections to particular evidence or arguments by defendant at trial based on its position that the amount of damages is the only remaining disputed issue.

## IV.     CONCLUSION

For the reasons above, (1) plaintiff may pursue a wrongful death claim at trial; (2) the damages limits in California Civil Code section 3333.2 apply to plaintiff's claim for failure to stabilize in violation of EMTALA, and (3) defendant's objections to the final pretrial order are overruled, but without prejudice to any objections or arguments at trial based on defendant's position that the amount of damages is the only remaining disputed issue.

IT IS SO ORDERED.

DATED:  December 5, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE